UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMY KONDA,<br><br>                Plaintiff(s),<br><br>   v.<br><br>UNITED AIRLINES, INC.,<br><br>                Defendant(s). | CASE NO. C21-1320-KKE<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkt. Nos. 65, 70. After reviewing the briefing and the record, and hearing the arguments of counsel, the Court grants Defendant's motion and denies Plaintiff's motion.

## I. BACKGROUND

Defendant United Airlines, Inc. ("United") hired Plaintiff Amy Konda as a reservation sales representative in 1988. *See* Watts Decl. (Dkt. No. 66), Ex. A at 6. In 1989, when Konda was working at Los Angeles International Airport, Konda applied for a customer service representative job. *See* Barton Decl. (Dkt. No. 72), Ex. 9 at 10. At that time, United did not allow employees to operate hazardous machinery if they had a medical condition associated with an increased risk for loss of consciousness, including but not limited to diabetes ("the diabetes policy"). *See id*. at 2. United followed the diabetes policy to reject Konda's application for the customer service representative job because it required operating hazardous machinery and Konda has diabetes. *See*

ORDER - 1

*id*. at 10–11. Konda filed a discrimination claim based on the diabetes policy and United settled the claim in 1991. *See id*. at 14–16.

That year, Konda transferred to a ticket sales representative position, and in 2002 was transferred to a station operations representative ("SOR") position at Seattle-Tacoma International Airport. Watts Decl., Ex. A at 9–10. The SOR position is governed by a collective bargaining agreement that defines the SOR position as a "specialty" position within the customer service representative ("CSR") classification of passenger service employees. *See* Overall Decl. (Dkt. No. 68), Ex. A at 1-1, 2-1. In early 2018, United announced a new policy that, as of April 1, 2018, only CSRs were allowed to operate jetbridges.[1] *See id*., Exs. B & C. As a result of this policy change, United required all employees within the CSR classification to complete jetbridge training no later than March 31, 2018. *Id*., Ex. D.

In the days before that deadline approached, Konda's supervisor asked about her training status, and Konda responded that she could not complete the training or operate a jetbridge due to the diabetes policy. Watts Decl., Ex. C at 5. The supervisor stated that he was unaware of such a policy and informed Konda that she must submit medical documentation of her condition to ensure compliance with any work restrictions. *Id*. at 5–6. The supervisor then told David Overall, the assistant general manager for customer service, about his conversation with Konda and asked for advice regarding the reasonable accommodation process. *Id*. at 7–8.

In addition to that line of conversation, Konda also received an email from a training coordinator in mid-March 2018 to check in about the jetbridge training. Overall Decl., Ex. D. Konda replied on March 28, 2018, stating that she could not complete the training because it was her understanding that she was prohibited from operating a jetbridge due to a longstanding,

---

[1] A jetbridge is an enclosed walkway that connects a gate to an airplane to allow passengers to board. *See, e.g.*, Konda Decl. (Dkt. No. 71), Ex. 1. A jetbridge is considered heavy machinery and is operated with a joystick. *Id*. ¶¶ 2, 9.

ORDER - 2

permanent work restriction.  *Id*.  The training coordinator copied Overall on her response to Konda and asked how to proceed.  *Id*.  Overall then contacted Anhvu Ly, United's human resources manager, who told Overall to confirm with United's medical department whether Konda's file contained any work restrictions and to initiate the reasonable accommodation program ("RAP") process.  *Id*.

Overall discovered that Konda's file lacked any indication of work restrictions.  Overall Decl., Ex. D.  On April 18, 2018, United sent a letter inviting Konda to participate in the interactive RAP process and sent Konda a work restriction form ("WRF") as well as a copy of her job description to give to her doctor, to identify her workplace restrictions.  Ly Decl. (Dkt. No. 67), Ex. A.  This letter instructed Konda to have her doctor complete the WRF "with as much detail as possible regarding your specific restrictions."  *Id*.  United received a WRF completed by Konda's doctor on April 30, 2018, indicating that Konda could not drive or operate equipment, climb, or work at heights for six months due to her increased risk of drop in blood sugar levels and transient fainting.  Torres Decl. (Dkt. No. 69), Ex. A.

United then scheduled a reasonable accommodation meeting with Konda for May 29, 2018, and sent Konda a form assessment of functional capacities ("AFC") based on the WRF it had received, and informed Konda that she either needed to (1) assent to and sign the AFC, or (2) immediately contact United to reschedule the meeting and contact her doctor to resolve discrepancies as to her functional capacities.  Ly Decl., Ex. B.  Konda signed the AFC, which acknowledged that her doctor had restricted her from *inter alia* operating machinery.  *See id.*, Ex. C.

At the May 29 meeting, Overall stated that operating a jetbridge is now an essential function of the SOR job, and that Konda's AFC conflicts with that job function. Ly Decl., Ex. D. Overall indicated that United could not identify a way to accommodate Konda's limitations within

ORDER - 3

the SOR job, but that it could offer Konda another job within the CSR classification ("the lobby job"). *Id.* The lobby job would not require operating a jetbridge. *Id.* Konda rejected that offer and disputed that operating a jetbridge was an essential function of her SOR job, and also stated that she actually could operate a jetbridge. *Id.* United asked Konda to update her medical documentation if she believed that the restrictions listed on the WRF were inaccurate.[2] *Id.*

On June 13, Konda's doctor completed another WRF that, again, included a six-month prohibition on operating hazardous equipment and machinery. Torres Decl., Ex. B. United notified Konda that this form required clarification from her doctor as to, *inter alia*, whether Konda could drive (because driving is considered operating a form of equipment). *Id.*, Ex. C. On June 28, a United medical specialist followed up with Konda regarding the RAP process, and Konda requested that this matter be handled at the local level. *See* Ly Decl., Ex. G. The medical specialist informed Konda that United's centralized RAP process is the exclusive method of identifying reasonable accommodations, and that Konda's local leadership could not resolve this issue separately from that process. *Id.*, Ex. H. Konda stated that she wanted to withdraw from the RAP process, and United then placed her on medical leave (with the option to utilize her available sick leave) and offered her three options: (1) she could remain on leave while participating in the RAP process to identify a reasonable accommodation that allows her to perform the essential functions of her current job or another position; (2) remain on medical leave until she could apply to transfer to another job that she could perform; or (3) remain on medical leave until her condition improved enough that she could perform the essential functions of her current job without an

---

[2] After this meeting, Konda filed a complaint with United's Ethics and Compliance team, which forwarded the complaint to human resources. Ly Decl., Exs. E & F. United ultimately found no evidence of an ethics violation related to the RAP process. *Id.*

accommodation.  *Id*.  On July 5, Konda confirmed via email that she selected the first option. Torres Decl., Ex. F.

Now that Konda had elected to re-engage with the RAP process, on July 11, Konda's doctor submitted updated medical documentation indicating that she remained restricted from operating hazardous machinery.  Torres Decl., Ex. G.  United created an updated AFC indicating that Konda was still precluded from operating machinery, and scheduled a second RAP meeting for August 1.  Ly Decl., Ex. L.  Konda signed the updated AFC.  Ly Decl., Ex. I.  At the meeting, Konda declined the lobby job, and asked whether United would exempt her from operating a jetbridge and allow her to work as an SOR temporarily.  *Id*., Exs. M & N.  Overall refused to change the definition of the SOR job to remove the jetbridge requirement.  *Id*.  Konda then asked whether United would allow her to bring a "Go Pack" with her to work, containing the items she needs to manage her diabetes, and United indicated that if she submitted updated medical documentation describing this accommodation, they could re-engage in the RAP process.  *Id*.

On August 7, Konda's doctor opined that Konda should be allowed to keep testing supplies and a snack for self-treatment of low blood sugar, and ten days later opined that so long as Konda had access to testing supplies and a snack, she had none of the restrictions listed in prior WRFs. Torres Decl., Exs. H & I.  United created an updated AFC to reflect these restrictions, and scheduled a third RAP process meeting for September 6.  Ly Decl., Ex. O. At this meeting, Konda accepted the AFC and United asked Konda if she was ready to return to work as an SOR that day. Watts Decl., Ex. A at 75.  Instead, at Konda's request, she returned to her SOR job on September 11 with the "Go Pack" accommodation.  *Id*.; Ly Decl., Ex. P.  Konda completed jetbridge certification in December 2019.  Overall Decl., Ex. E.

On July 2, 2021, Konda filed an action in King County Superior Court against United alleging 1) disability discrimination; 2) failure to accommodate; and 3) retaliation.  All three causes of

ORDER - 5

action were brought under the Washington Law Against Discrimination ("WLAD"), WASH. REV. CODE § 49.60. United then removed the case to this Court. Dkt. No. 1. The parties engaged in discovery, and have now filed the pending cross-motions for summary judgment.[3]

## II.    LEGAL STANDARDS

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Metaphysical doubt is insufficient (*id.* at 586), as are conclusory, non-specific allegations (*Lujan*, 497 U.S. at 888–89).

---

[3] Konda did not expressly seek summary judgment on her retaliation claim in her motion (Dkt. No. 70) and dedicated only one sentence to the issue in opposition to United's motion (Dkt. No. 77 at 25). Despite her failure to address the claim in her briefs, at oral argument, Konda's counsel stated that Konda was, in fact, moving for full summary judgment, including on her retaliation claim. Dkt. No. 90 at 21–22.

## III. ANALYSIS

WLAD prohibits, among other things, employment discrimination on the basis of disability and retaliation against employees who oppose discriminatory practices. *See* WASH. REV. CODE §§ 49.60.030, 49.60.210. Konda's complaint alleges that United violated WLAD in three ways: (1) by discriminating against her (placing her on unpaid leave) due to her diabetes, (2) by failing to accommodate her disability, and (3) by retaliating against her. Dkt. No. 1-1 ¶¶ 44–60.

### A. United is Entitled to Summary Judgment on the Disability Discrimination Claim.

In order to prevail on a disability discrimination claim under WLAD,[4] Konda must first establish a *prima facie* case of discrimination, showing that she: (1) is disabled, (2) is a "qualified individual" who can perform the essential functions of her job with or without accommodation, and, (3) suffered an adverse employment action because of her disability. *See Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (2018). If she does so, then the burden shifts to United to provide a legitimate, nondiscriminatory reason for the adverse employment action. *See Scrivener v. Clark Coll.*, 334 P.3d 541, 546 (2014). If United can do so, then the burden shifts back to Konda to show that the reason given by United was pretextual.[5] *See id.*

United argues that Konda has not established a *prima facie* case of discrimination because she could not perform the essential functions of her job (specifically operating a jetbridge) with or without an accommodation, and therefore cannot satisfy the second element of the claim. Dkt.

---

[4] The similarities between WLAD and the federal Americans with Disabilities Act ("ADA") lead courts to look to federal case law interpreting the ADA to guide interpretation of WLAD. *See, e.g.*, *Taylor v. Burlington N. R.R. Holdings*, 904 F.3d 846, 848 (9th Cir. 2018).

[5] Konda could have presented direct evidence of discrimination rather than proceeding under the burden-shifting analysis described here. *See, e.g.*, *Scrivener*, 334 P.3d at 546. Instead, Konda's motion applies the burden-shifting framework described in this order in her own motion. *See* Dkt. No. 70 at 15–20. To the extent that she contends that United's decision to place Konda on leave "exclusively because of her disability" (Dkt. No. 77 at 15) constitutes direct evidence of discrimination, this argument is not supported by the evidence indicating that, as discussed herein, Konda was placed on leave because she could not perform her job duties and had declined to participate in the RAP process. Ly Decl., Exs. G & H.

No. 65 at 25. United cites evidence showing that SORs were required to operate jetbridges, and that Konda's doctor repeatedly opined that she could not operate machinery, without reference to any potential accommodation. *See* Overall Decl., Exs. A–C; Torres Decl., Exs. A & B. This evidence indicates that operating jetbridges is an essential function of the SOR job, and that Konda could not perform that function during the relevant time period.[6]

Konda disagrees, but cites no evidence contradicting United's definition of the SOR job nor any evidence contradicting her doctor's opinion that she could not operate machinery during the relevant time period. She notes that, due to the timing of her shifts and her seniority, she is rarely required to operate a jetbridge, and that she has been called to operate a jetbridge only twice between November 8, 2018, and August 25, 2023. Dkt. No. 77 at 9–10; Konda Decl. ¶ 10. But even if Konda performed this function infrequently, that fact does not undermine United's determination that operating a jetbridge is an essential function of the SOR job. *See, e.g.*, *Bates v. United Parcel Serv.*, 511 F.3d 974, 990 (9th Cir. 2007) (explaining that, under the ADA, the essential functions of a job are determined with consideration given to "the employer's judgment as to what functions of a job are essential" as well as the employer's written job descriptions (citing 42 U.S.C. § 12111(8))). United provided undisputed evidence of its business need to concentrate jetbridge operation authority within the CSR classification umbrella, which includes Konda's SOR job. *See, e.g.*, Overall Decl., Exs. A–D.

Furthermore, Konda cites no authority to support her contention that United should have allowed her to perform a job inconsistent with her medical restrictions or should have removed the

---

[6] The relevant time period for Konda's claims begins the first time she reported to United that she was medically restricted from operating a jetbridge (March 2018) and continues until she submitted evidence indicating that this restriction was no longer in effect (August 17, 2018). After Konda submitted the updated medical evidence, United scheduled a meeting to approve the accommodation and Konda returned to her SOR job on September 11, 2018. Konda has not argued that United unreasonably delayed in acting on the new medical information between August 17, 2018, and September 11, 2018. Because Konda's claims focus on United's actions before August 17, 2018, this order focuses on that time period as well.

jetbridge operation function of her job. By contrast, United cites authority holding the opposite. *See, e.g., Davis v. Microsoft Corp.*, 70 P.3d 126, 132–33 (2003) ("Given the definition of 'essential functions,' as that term is used in the second element of a plaintiff's prima facie case, Washington law does not require an employer to eliminate such a job duty. Requiring elimination of an indispensable task or role would be tantamount to altering the very nature or substance of the job.").

Moreover, Konda provided United with medical evidence indicating that she could not operate machinery during the relevant time period, and she agreed in writing that these opinions meant that she could not operate a jetbridge. *See* Torres Decl., Exs. A, B, G & H; Ly Decl., Exs. C & J. While this evidence is undisputed, Konda now contends (Dkt No. 70 at 6–8, Dkt. No. 77 at 20–21) that she has always been able to operate a jetbridge. At oral argument, Konda's counsel argued that Konda's doctor's opinion must have been based on a desire to avoid risk, unfamiliarity with Konda or the requirements of the SOR job, or unfounded stereotypes about people with diabetes. *See* Dkt. No. 90 at 10–11, 37–38. However, Konda cites no authority requiring United to second-guess her doctor or to undertake its own investigation of Konda's medical restrictions and limitations.

And to the extent that Konda also argues that she should have been accommodated with a Go Pack sooner, and therefore could have avoided being placed on leave (Dkt. No. 82 at 8), this accommodation was not raised until the end of the relevant time period. Prior to August 17, 2018, Konda's doctor had repeatedly opined that she could not operate machinery without exception, and Konda had agreed. *See* Torres Decl., Exs. A, B, G & H. Once the Go Pack accommodation was proposed, United acted on that updated medical information within a matter of weeks, and Konda then returned to her SOR job. *See* Watts Decl., Ex. A at 72–75. Konda cites no authority requiring United to provide accommodations unsupported by the medical evidence, nor has she

ORDER - 9

shown that United failed to reasonably engage with her once her doctor identified the "Go Pack" accommodation.

For all of these reasons, Konda has failed to identify any evidence showing that she could have performed her job with or without an accommodation during the relevant time period. Accordingly, Konda cannot satisfy the second element of her disability discrimination claim and United is entitled to judgment as a matter of law.

**B.     United is Entitled to Summary Judgment on the Accommodation Claim.**

An accommodation claim under the WLAD has four elements: Konda must establish that (1) she is disabled, (2) she is qualified for the job in question and capable of performing it with reasonable accommodation, (3) the employer had notice of her disability, and (4) the employer failed to reasonably accommodate her disability. *See McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1315 (W.D. Wash. 2014).

United contends that Konda cannot satisfy the second element of an accommodation claim because, during the relevant time period, Konda's doctor indicated that she could not operate machinery without reference to a possible accommodation for that restriction. Dkt. No. 75 at 18. Undisputed evidence shows that United offered Konda the lobby job, which would have been compatible with Konda's medical restrictions during the relevant time period, and that Konda rejected that offer. Ly Decl., Ex. D. After the relevant time period, when the machinery restriction was lifted, United accommodated Konda by allowing her to have access to a Go Pack and Konda returned to work. Torres Decl., Exs. H & I; Ly Decl., Exs. O & P.

As explained *supra*, although Konda now maintains that she has always been capable of operating a jetbridge and that United relied on diabetes stereotypes to find her medically ineligible to perform the SOR job, the evidence does not support this interpretation. Dkt. No. 77 at 7–12. Rather, Konda submitted multiple medical opinions indicating that she was restricted from

ORDER - 10

operating machinery (Torres Decl., Exs. A, B, G & H), and Konda acknowledged that this medical evidence conflicted with the requirements of the SOR job (Ly Decl., Exs. C & J).[7] Konda cites no authority to support her argument that United should not have relied on Konda's doctor's opinions in determining whether she could perform her job duties, or that United should have conducted its own investigation to determine what limitations were caused by Konda's diabetes.[8] *See* Dkt. No. 77 at 10. The burden is on Konda (not United) to establish the existence of Konda's medical restrictions. *See, e.g.*, WASH. REV. CODE § 49.60.040(d)(ii) ("The employee must have put the employer on notice of the existence of an impairment, and medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect.").

Because the undisputed evidence shows that Konda's medical restrictions conflicted with the essential functions of the SOR job during the relevant time period, Konda cannot satisfy the second element of her accommodation claim. United is therefore entitled to judgment as a matter of law on this claim.

C.      **United is Entitled to Summary Judgment on the Retaliation Claim.**

Konda addresses the retaliation claim in one sentence in her opposition to United's summary judgment motion: "[United] retaliated against Konda by forcing her to accept unpaid

---

[7] At oral argument (Dkt. No. 90 at 36–38), Konda's counsel directed the Court's attention to *Brownfield v. City of Yakima* as support for the argument that Konda should not have been required to disprove the existence of a limitation that she had never claimed to have. 612 F.3d 1140 (9th Cir. 2010). The *Brownfield* plaintiff was preemptively required by his employer to undergo a fitness-for-duty medical examination, and he argued that his employer's business necessity did not justify imposing this requirement. 612 F.3d at 1145. Here, United did not require Konda to undergo a preemptive medical examination in order to retain her SOR job; Konda herself raised the issue of medical limitation when she explained why she had not completed the required jetbridge training. *Brownfield* is therefore inapposite.

[8] At oral argument, Konda's counsel stated that Konda authorized United to communicate directly with her doctor, but the evidence dating to the relevant period does not support this assertion. *See* Torres Decl., Exs. A, B. On August 17, 2018, Konda for the first time authorized United to communicate with her doctor, but at that point Konda was medically cleared to operate machinery. *See id.*, Ex. I. Regardless, Konda cites no authority suggesting that United was required to contact Konda's doctor and challenge her opinions regarding Konda's documented work restrictions.

ORDER - 11

sick leave or a 'permanent' demotion to a substantively different job that paid less when she demanded that [United] comply with the ADA." Dkt. No. 77 at 23. This sentence cannot establish a *prima facie* claim of retaliation under WLAD, which has three elements: (1) plaintiff engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the two. *See Burchfiel v. Boeing Co.*, 205 P.3d 145, 152 (Wash. Ct. App. 2009).

Konda has not identified with specificity the conduct that she contends constitutes the protected activity, nor has she identified a causal link between that activity and an adverse employment action. Her meager opposition cannot withstand United's motion for summary judgment on this claim.

## IV. CONCLUSION

For these reasons, the Court GRANTS United's motion for summary judgment (Dkt. No. 65) and DENIES Konda's cross-motion for summary judgment (Dkt. No. 70). The clerk is directed to enter judgment for United.

Dated this 21st day of November, 2023.

*Kymberly K. Evanson*

Kymberly K. Evanson
United States District Judge